UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

LINDSAY MADER,
on behalf of herself and all
others similarly situated,

        Plaintiff,                         Case No. 20-cv-676

     v.

DENTAL CRAFTERS, INC.,

        Defendant.

## JOINT MOTION FOR AND BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAINTIFF'S SERVICE AWARD, AND COUNSEL'S AWARD OF FEES AND COSTS

Plaintiff Lindsay Mader, on behalf of herself and all others similarly situated, and Defendant Dental Crafters, Inc. (together, the "Parties"), jointly move this Court for final approval of the Parties' Amended Settlement Agreement and Release of Claims, ECF No. 22 ("Amended Settlement Agreement"), as preliminarily approved by this Court on July 25, 2022. (ECF No. 23.)

### PROCEDURAL POSTURE

On July 26, 2021, the Parties jointly moved this Court for preliminary approval of the Parties' Settlement Agreement and Release of Claims. (ECF No. 13.) On July 7, 2022, this Court entered an Order outlining, in part, concerns regarding the Parties' class definition as contained in their Settlement Agreement and Release of Claims. (ECF No. 20.)

On July 13, 2022, the Parties' participated in a telephonic conference with the Court, at which time the Court's concerns were discussed. (*See id.; see also* Opinion and Order, ECF No. 23.) As an outcome of that conference, this Court asked the Parties to correspondingly amend

their Settlement Agreement and Release of Claims, (ECF No. 21), resulting in the filing of the Parties' Amended Settlement Agreement on July 20, 2022. (ECF No. 22.) Satisfied that the Amended Settlement Agreement addressed the Court's concerns, this Court entered its Opinion and Order preliminarily approving the Amended Settlement Agreement on July 25, 2022. (ECF No. 23.)

Thereafter, and as Ordered by the Court, the Parties corrected their notice by removing the term "non-exempt" from their class definition. (Declaration of James A. Walcheske ("Walcheske Decl."), ¶ 36.) On August 3, 2022, Plaintiff's counsel mailed the corrected notice to all members of the class via U.S. first class mail. (*Id.* at ¶ 37.) Of the 104 notices mailed by Plaintiff's counsel, only one has remained undeliverable through counsel's efforts to locate updated contact information for all notices that were initially returned as undeliverable.[1] (*Id.* at ¶ 38.) Thus, 103 of the 104 notices that were mailed reached their intended recipients. (*Id.*)

In accordance with the Parties' Amended Settlement Agreement, all requests for exclusion and objections had to be postmarked no later than thirty (30) days after mailing, or by September 3, 2022, in order to be valid ("the notice period"). (ECF No. 22, ¶ 14(e).) By the close of the notice period, no objections and twenty-three (23) requests for exclusion were received by Plaintiff's counsel. (*Id.* at ¶ 40.) As of October 10, 2022, no objections or additional requests for exclusion had been received. (*Id.*)

Accordingly, all participating class members who did not exclude themselves from the Amended Settlement Agreement will receive the amounts specifically allocated to them as set forth in Exhibit A to their Settlement Agreement. (ECF No. 13-1, pp. 15-17.)

---

[1] Plaintiff's counsel utilizes a paid service through Thomson Reuters that allows them to, in part, research the current contact information of putative class members. (*Id.* at ¶ 39.)

Given the considerations above, counsel for the Parties believe that the terms and conditions embodied in the Parties' Amended Settlement Agreement are fair, reasonable, and adequate. (*See* Tobin Decl., ¶ 13.)

## **REMAINING PROCEDURE TO CONCLUDE THIS LITIGATION**

Pursuant to the Parties' Amended Settlement Agreement, Defendant will send checks for all Court-approved settlement amounts directly to all participating class members within twenty-one (21) days of this Court's Order granting final settlement approval. (ECF No. 22, ¶ 5.) The amounts sent to each individual class member will correspond to their specifically allocated amount as set forth in Exhibit A to the Parties' Settlement Agreement. (ECF No. 13-1, pp. 15-17.)

To facilitate payment, Plaintiff's counsel provided a spreadsheet with the updated contact information for all participating class members to Defendant's counsel for Defendant's use. (Walcheske Decl., ¶ 41.) To the extent that a settlement check is returned to Defendant as undeliverable, Defendant will take reasonable steps to obtain updated contact information for the intended recipient. (*Id.* at ¶ 42.) To the extent any participating class member reports that he/she did not receive his/her check, Defendant will, if necessary, void the check initially mailed to that class member and issue a new check to the individual. (*Id.* at ¶ 43.)

Additionally, within twenty-one (21) days of this Court's Order, Defendant shall deliver checks for Plaintiff's Court-approved Service Award and Plaintiff's counsel's Court-approved attorneys' fees and costs to Plaintiff's counsel. (ECF No. 22, ¶ 6.)

Participating class members will have one hundred and eighty (180) days after issuance of their settlement checks to negotiate or cash the same. (*Id.* at ¶ 5.) After that period elapses, any uncashed/undeposited checks will be voided and their amounts will revert to Defendant. (*Id.*)

## ARGUMENT

### I.     FINAL SETTLEMENT APPROVAL STANDARD

A Court may approve of the settlement of a Fed. R. Civ. P. 23 class action if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, the court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers other factors when determining whether a proposed class action settlement is fair, adequate, and reasonable, such as: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. Cal. Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)). Ultimately, resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996).

### II.     FINAL SETTLEMENT APPROVAL IS APPROPRIATE IN THIS CASE

This case involved *bona fide* disputes regarding whether Defendant violated the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), and Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et

seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. ("WWPCL"), as alleged by Plaintiff, including disputes on liability and damages, as demonstrated by the Parties' pleadings in this case, as well as the Declaration filed in support of preliminary approval of the Parties' Settlement Agreement. (*See, e.g.,* ECF Nos. 5, 7, 15.) As a specific example, in Defendant's *Answer to Complaint*, Defendant denied the vast majority of the allegations contained in Plaintiff's Complaint, and pleaded fourteen (14) affirmative defenses to her claims that directly opposed the suitability of this litigation for collective or class action treatment, as well as the nature of the "hours worked" for which she sought compensation at issue in this case, affirmatively pleading. (ECF No. 5.)

Given such disputes and the inherent uncertainty of all litigation, particularly litigation involving putative collectives and classes, the outcome of this litigation and Plaintiff's "success" in the same was clearly uncertain. Indeed, complicating such probability of success was the potential for Plaintiff to not obtain class certification, particularly given the complete absence of participation in this litigation subsequent to conditional certification. Without such certification, to which the Parties' have now stipulated for settlement purposes, Plaintiff's putative class action would have been an individual action for individual damages. All putative class members on whose behalf Plaintiff brought her claims would thus be left to pursue remedies on their own, assuming they even chose to do so.

Indeed, even leading into and during the Parties' arm's length settlement negotiations, the parties stood by their respective and contrary positions as to liability and damages. (*See Declaration of Matthew J. Tobin¸* ECF No. 15 ("Tobin Decl."), ¶ 11.) However, in an effort to avoid the uncertainty of litigation, the Parties believed it was in their best interest to engage in such negotiations.

In order to ensure the Parties had adequate information to discuss resolution, Defendant's counsel provided Plaintiff's counsel with significant and voluminous information, data, and documents necessary to fully and fairly evaluate the claims of putative class members, including relevant, detailed, and comprehensive timekeeping and payroll data for Defendant's location in the State of Wisconsin. (Tobin Decl., ¶ 12.) Counsel then reviewed such data and documents and created damages projections and calculations. (*Id.*) Through that review, Plaintiff's counsel was able to determine, with certainty, the amount of damages they believed putative class members were "owed" through Plaintiff's claims brought on their behalf. (*Id.* at ¶ 19.)

Through the Parties' respective efforts, they ultimately reached an agreement to fully and finally resolve their disputes, the product of which is their Amended Settlement Agreement. (*See id.* at ¶ 13.)

Thus, although the Parties resolved their disputes amicably, this litigation was legally, strategically, and procedurally complex and subject to dispute on each level, such that the amount of work put into the matter by the Parties was necessary and warranted, in relation to the overall amount of monies to be recovered by the class through the Parties' Amended Settlement Agreement. (*See id.* at ¶¶ 11-14.) Therefore, the Parties believe the terms of their Amended Settlement Agreement to be fair, reasonable, and adequate under all such circumstances. (*See id.* at ¶ 13.) Further, as stated *supra*, all class members were afforded notice of the pertinent terms of the Parties' Amended Settlement Agreement, were provided ample opportunity to object if they did so, and, to date, none have. (*See* Walcheske Decl., ¶ 40.)

The Parties particularly believe their Amended Settlement Agreement to be fair, reasonable, and adequate, given that all participating class members stand to receive their actual amounts calculated to be "owed," *plus* liquidated damages of 1.25 times their calculated amounts.

(*See* Tobin Decl., ¶ 19.) Thus, this is not a scenario where class members are receiving a portion of their calculated amounts or "representative" damages – they are receiving more than their calculated amounts without having to have filed a claim or taken individual action to obtain the same.

For all such reasons, the Parties believe that their Amended Settlement Agreement, "taken as a whole, is in the best interests of" the participating class members. *United Founders Life Ins. Co.*, 447 F.2d at 655. Accordingly, the Parties ask that this Court grant final approval of the same.

## III. PLAINTIFF'S SERVICE AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to service awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiff is the only named plaintiff in this litigation. By prosecuting this action as the only named plaintiff, Plaintiff assumed significant risks: "if the class action suit fails, no incentive will be made," *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 876 (7th Cir. 2012), and "should the suit fail, [she] may find [herself] liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees." *Id*. "The incentive reward is designed to compensate [her] for bearing these risks, as well as for any time…participating in the litigation as any plaintiff must do." *Id.*

Pursuant to the Parties' Amended Settlement Agreement, the Parties have agreed that Plaintiff will receive a Service Award, subject to Court approval, in the total amount of $3,000.00.

7

(ECF No. 22, ¶ 5.) Defendant does not oppose this request. (*Id.*)

As indicated by the amounts allocated to participating class members, Plaintiff's Service Award was negotiated and agreed upon separate from the amounts allocated thereto. (*See id.* at ¶ 4.) Accordingly, awarding Plaintiff her requested Service Award will not impact or otherwise affect the amounts allocated and payable to participating class members in any way. (*See id.*)

Plaintiff's Service Award is reflective of her involvement in this case, her work with counsel in bringing and further prosecuting this matter, the monetary success of the Parties' settlement, and the extent to which class members have benefitted from Plaintiff's efforts to protect and pursue their legal and monetary interests. (Walcheske Decl., ¶ 44.) Further, the amount of Plaintiff's requested Service Award is fair, reasonable, and comparable vis-à-vis other service awards granted to other lead plaintiffs in cases filed under the FLSA and WWPCL in Wisconsin District Courts.[2] This includes cases in which the amounts recovered by the respective collectives and classes are comparable to (or in some cases less than) the amounts recovered here.[3]

---

[2] *See, e.g.*, *Kelly v. Hudapack Metal Treating, Inc.*, No. 20-cv-130-BHL, ECF No. 37 (E.D. Wis., June 24, 2021) (service award of $3,000.00); *Hoaglan v. Heritage Senior Living, LLC*, No. 19-cv-1361-LA, ECF No. 30 (E.D. Wis., Mar. 19, 2021) (service award of $5,000.00); *Henderson, et. al. v. Russ Darrow Group, Inc.*, No. 20-cv-1421-JPS, ECF No. 51 (E.D. Wis., Mar. 16, 2021) (service awards of $2,500.00 to each named plaintiff); *Merschdorf v. DC Industries, Inc.*, No. 19-cv-1037-JDP, ECF No. 45 (W.D. Wis., Mar. 4, 2021) (service award of $3,000.00); *Henderson v. Automated Pet Care Products, Inc.*, No. 19-cv-1640-LA, ECF No. 41 (E.D. Wis., Feb. 9, 2021) (service award of $5,000.00); *Medina v. Automax Financial, LLC*, No. 19-cv-1582-JPS, ECF No. 41 (E.D. Wis., Jan. 29, 2021) (service award of $7,500.00); *Schmitt v. Color Craft Graphic Arts, LLC*, No. 19-cv-1705-WCG, ECF No. 40 (E.D. Wis., Nov. 13, 2020) (service award of $2,500.00); *Bills v. TLC Homes, Inc.*, No. 19-cv-148-PP, ECF No. 53 (E.D. Wis., Oct. 8, 2020) (service award of $3,500.00); *Clark v. Brunswick Corp.*, No. 19-cv-141-WCG, ECF No. 44 (E.D. Wis., May 22, 2020) (service award of $2,500.00); *Doberstein v. East Wisconsin Savings Bank*, No. 18-cv-1931-WCG, ECF No. 35 (E.D. Wis., Nov. 26, 2019) (service award of $2,500.00); *Johnson v. National Technologies, Inc.*, No. 18-cv-462-DEJ, ECF No. 57 (E.D. Wis., July 22, 2019) (service award of $8,500.00); *Paswaters v. Krones, Inc.*, No. 19-cv-993-JPS, ECF No. 61 (E.D. Wis., July 12, 2019) (service award of $7,500.00); *Eckstein v. St. Paul Elder Services, Inc.*, No. 19-cv-945-WCG, ECF No. 38 (E.D. Wis., June 28, 2019) (service award of $2,500.00); *Slaaen, et. al. v. Senior Lifestyle Corporation, et al.*, No. 18-cv-1562-JPS, ECF No. 92 (E.D. Wis., Oct. 3, 2018) (service awards of $7,500.00 to each named plaintiff).

[3] *See, e.g. Hoaglan*, No. 19-cv-1361-LA, ECF No. 16-1 ($5,000 service award where average recovery was $16.59 per class member); *Schmitt*, No. 19-cv-1705-WCG, ECF No. 20-1 ($2,500 service award where class recovery totaled $3,074.72); *Bills*, No. 19-cv-148-PP, ECF No. 27 ($3,500 service award where average recovery was $32.45 per class member and class recovery totaled $12,689.13); *Clark*, No. 19-cv-141-WCG, ECF No. 25-1 ($2,500 service award where average recovery was $21.30 per class member and class recovery totaled $11,694.53); *Doberstein*, No. 18-cv-1931-WCG, ECF No. 23 ($2,500 service award where class recovery totaled $249.52); *Eckstein*, No. 19-cv-945-

For all such reasons, Plaintiff asks that this Court approve Plaintiff's agreed-upon Service Award of $3,000.00.

## IV.    COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In addition to seeking final approval of the Parties' Settlement Agreement and Plaintiff's Service Award, Plaintiff's counsel further seeks, and Defendant does not oppose, final approval of an award of attorneys' fees and costs in the total amount of $26,000.00. (ECF No. 22, ¶¶ 4, 6.) Such award was negotiated separately from the amounts allocated to the Rule 23 class and are not a part of any sort of settlement fund. (*See id.*, ¶¶ 4-5.)

At the outset of this matter, Plaintiff's counsel accepted the case on a contingency basis, through which Plaintiff agreed to compensate Plaintiff's counsel with the greater of forty percent (40%) of any recovery, exclusive of costs, should a recovery be obtained, or the actual amount of attorneys' fees and costs billed or settled for. (Walcheske Decl., ¶ 23.) Counsel structures its agreements in such a manner because of cases such as this where the anticipated recovery is relatively "low" and, therefore, not suitable for division as a class fund. (*Id.* at ¶ 24.) Pursuant to its fee arrangement with Plaintiff, Plaintiff's counsel agreed to be responsible for all attorneys' fees and costs in the event of an adverse result and, to date, counsel has not received any compensation for its time spent on the case or reimbursement for its costs expended investigating, litigating, administrating, and resolving this matter. (*Id.* at ¶ 25.)

Plaintiff's counsel's billing records are provided to the Court as Exhibit B to the Declaration of James A. Walcheske. As reflected therein, during the litigation of this matter, counsel: investigated Plaintiff's claims; drafted and filed the Complaint and corresponding filings;

---

WCG, ECF No. 18-1 ($2,500 service award where average recovery was $19.97 per class member and class recovery totaled $7,712.74).

participated in a Rule 26(f) Conference and jointly prepared a Rule 26(f) Conference Report; prepared Plaintiff's Initial Disclosures; engaged in comprehensive written discovery, including written interrogatories and requests for production of documents; analyzed data produced by Defendant; calculated damages and created damages models; drafted, circulated, reviewed, and revised draft stipulations for conditional certification; drafted, circulated, reviewed, and revised the proposed notice to putative members of the FLSA collective; engaged in case administration post-conditional certification; drafted, circulated, reviewed, and revised the settlement agreement; drafted, circulated, reviewed, and revised the preliminary approval filings, including the proposed notice of settlement; participated in calls with Plaintiff, Defendant's counsel, and the Court; corresponded with Plaintiff and Defendant's counsel; engaged in internal, case-related discussions; engaged in settlement notice administration; communicated with Rule 23 class members; and drafted these filings with the Court, among other tasks and activities.

As a result of Plaintiff's counsel's efforts on behalf of Plaintiff and the Rule 23 class, Defendant has agreed to pay participating class members their actual amounts calculated to be "owed" to them, as well as liquidated damages of 1.25 times those amounts, such that their recoveries are reasonable and adequate. (Tobin Decl., ¶ 19; Walcheske Decl., ¶ 34.) Further, the Parties' Amended Settlement Agreement was structured to maximize payment to all participating class members by automatically issuing payments to them unless they affirmatively excluded themselves from the Rule 23 class. All such payments will be made without any requirement to file a claim or otherwise take any action whatsoever. (*See* ECF No. 13-1, p. 11.)

Plaintiff's counsel believes that through its efforts on this matter, it helped Plaintiff and the Rule 23 class recover over and above their unpaid wages (allegedly) owed to them flowing from Plaintiff's claims brought on their behalf. (Walcheske Decl., ¶ 34.) Further, they believe that all

work performed, and services rendered in litigating this matter through its conclusion were necessary in furtherance of such litigation and resolution, particularly in light of the risks Plaintiff and her counsel faced in this case. (*See id.*; *see also* Tobin Decl., ¶ 11.)

As of September 6, 2022, Plaintiffs' counsel has devoted approximately 75.9 hours to litigating, resolving, and concluding this matter.[4] (Walcheske Decl., ¶ 29.) Pursuant to counsel's fee agreement with Plaintiff, Plaintiff's counsel has not received any compensation for these hours or reimbursement of its litigation-related costs. (*Id.* at ¶ 25.) Accordingly, and pursuant to the Parties' Amended Settlement Agreement and counsel's fee agreements with Plaintiff, Plaintiff's counsel seeks an award of their attorneys' fees and costs in the amount of $26,000.00. (*See* ECF No. 22, ¶¶ 4-5.) Counsel believes this award to be fair and reasonable. (Tobin Decl., ¶ 16; Walcheske Decl., ¶ 35.)

Generally, in awarding or approving a fee award a court determines the market price for an attorney's legal services via either "common fund principles"[5] or the "lodestar" method. Ultimately, and regardless of the method by which a plaintiff petitions the court for an award of attorneys' fees and costs, the court "must do [its] best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*"Synthroid I"*); *see also In re Synthroid Mktg Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (*"Synthroid II"*); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013); *Steinlauf v. Cont'l Illinois Corp.*, 962 F.2d

---

[4] Notably, this figure only includes hours expended through September 6, 2022, and specifically excludes all hours Attorney Walcheske spent drafting the present filing and his Declaration, reviewing the firm's billing, and obtaining declarations from counsel. (Walcheske Decl., ¶ 29.)

[5] *Florin v. Nations St. Paul of Georgia, N.A.*, 34 F.3d 560, 563-64 (7th Cir. 1994) (noting that "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund," and that, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund."); *see also Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629 (7th Cir. 2011); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007); *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005).

566, 572-73 (7th Cir. 1992) (stating, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client").

Here, because counsel's requested reimbursement of fees and costs is not a percentage of a common settlement fund, Plaintiff motions this Court for an award of attorneys' fees and costs via the "lodestar" method, which is determined by multiplying counsel's "reasonable" hourly rate by the number of hours reasonably expended on the case. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d 1249,1255 (7th Cir. 1995).

A "reasonable" hourly rate reflects the "market rate" for the attorney's services. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's actual billing rate for comparable work or similar litigation is appropriate to use as the market rate. *Pickett*, 664 F.3d at 640; *Denius*, 330 F.3d at 930; *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *People Who Care*, 90 F.3d at 1310; *Uphoff*, 176 F.3d at 407. Ultimately, a fee applicant need only offer third party affidavits attesting to comparable billing rates to meet her burden. *Pickett*, 664 F.3d at 641; *Spegon*, 175 F.3d at 556.

From the outset of this litigation through March 31, 2022, Attorneys Walcheske and Luzi billed at their then-usual and customary rates of $400.00 per hour, and Attorney Tobin billed at his usual and customary rate of $325.00 per hour. (Walcheske Decl., ¶ 11.) As of April 1, 2022, Attorneys Walcheske and Luzi's rates increased to $450.00 per hour, which has been their usual and customary rate utilized in all legal matters, and is charged to their fee-paying clients as well. (*Id.* at ¶ 12, Exhibit A.)

Wisconsin District Courts that have been asked to consider and approve counsel's present rate of $450.00 per hour have unanimously done so. (*Id.* at ¶ 14 (collecting cases).) Such Courts also routinely approved counsel's historical rates of $400.00 per hour for Attorneys Walcheske and Luzi, and Attorney Tobin's hourly rate of $325.00 per hour. (*Id.* at ¶ 15 (collecting cases).)

As further support for the reasonableness of counsel's rates and their representativeness of the market rate in cases such as this, the Declarations of Robert M. Mihelich and David Zoeller are filed herewith. As averred therein, Attorney Mihelich also bills at an hourly rate of $450.00 per hour (Declaration of Robert M. Mihelich, ¶ 6), while Attorney Zoeller, who graduated from law school the same year as Attorney Walcheske, bills at an hourly rate of $500.00 per hour. (*Compare* Declaration of David Zoeller, ¶ 2 *with* Walcheske Decl., ¶ 3.)

Thus, applying the lodestar method in this case by multiplying counsel's reasonable rates of $450.00 and $325.00 per hour, and their Assistant's rate of $125.00 per hour times their hours respectively devoted to this matter yields attorneys' fees of $26,945.00 as of September 6, 2022.[6] (*Id.* at ¶ 28, Exhibit B.)

In addition to seeking reimbursement of their fees devoted to this matter, Plaintiff's counsel seeks reimbursement of its out-of-pocket litigation and administration expenses. To date,

---

[6] As indicated *supra*, this excludes the value of Attorney Walcheske's time spent drafting the present filings with the Court for final approval. (*Id.* at ¶ 29, Exhibit B.)

Plaintiff's counsel has incurred and has not received any reimbursement for a total of $534.00. (*Id.* at ¶ 32.) This includes the filing fee ($400.00), postage ($2.00), and administration costs ($132.00). (*Id.*)

As part of the settlement of this case, and upon approval by this Court, Defendant has agreed to pay Plaintiff's counsel's negotiated fees and costs in an amount not to exceed $26,000.00. (ECF No. 22, ¶¶ 4-5.) Based on the figures provided above, which do not account for the value of any work performed by counsel subsequent to September 6, 2022, this negotiated amount results in a recovery of fees and costs approximately $1,479.00 less than those actually incurred as of that date. (*See* Walcheske Decl., ¶ 28, Exhibit B.)

For all such reasons, counsel's requested attorneys' fees and costs as negotiated and agreed upon by the Parties are fair and reasonable and should be awarded without deduction.

## CONCLUSION

For all the reasons stated herein, as well as all those set forth in the Parties' prior filings in support of preliminary approval, the Parties respectfully request that this Court:

1.  Approve the Parties' Amended Settlement Agreement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23;

2.  Approve the Parties' Amended Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act;

3.  Order that the Parties and all class members who did not timely and properly opt-out of the Parties' Amended Settlement Agreement are bound by the Parties' Amended Settlement Agreement;

4.  Approve Plaintiff's Service Award in the amount of $3,000.00;

5.  Approve Plaintiff's counsel's award of fees and costs in the amount of $26,000.00;

6.    Order that Plaintiff's released claims are dismissed with prejudice;

7.    Order that the participating class members' released claims, as defined by the Parties' Amended Settlement Agreement, are dismissed with prejudice; and

8.    Order that the claims of the non-participating class members who requested exclusion from the Parties' Amended Settlement Agreement be dismissed without prejudice.

Dated this 12th day of October, 2022

s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com

*Attorneys for Plaintiff*

s/ *John P. Loringer*
John P. Loringer, State Bar No. 1059778

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
740 N. Plankinton Avenue, Suite 600
Milwaukee, Wisconsin 53203
Telephone: (414) 276-8816
Email: john.loringer@wilsonelser.com

*Attorney for Defendant*